Thank you, your honor. May it please the court. My name is Donald Zachary and I am the intervener and appellate in this matter. With the permission of the court, I would like to reserve five minutes of my time for rebuttal. We are here because the district court made two fundamental errors. The district court decided the motion to unseal dispositive motion documents using the good cause standard appropriate to Rule 26C, a decision that this court reviews de novo and I believe must reverse as a matter of law. Whatever standard the district court thought it was applying, the court abused its discretion by failing to articulate compelling reasons based on non-speculative facts for keeping thousands of pages of dispositive motion documents under seal. And while the posture of this case presents an interesting issue that perhaps law school students might debate as to whether on the second issue it is de novo review or abuse of discretion, we believe that even if this court applies the abuse of discretion to what the judge did, the decision still must be reversed. Counsel, may I ask a question? In the second order, the July 7th order, the district court referred to, although he had not used the words, the magic words, compelling reasons, at that point he did say, well I did have compelling reasons even though I didn't use the words. What is your response to that? Your Honor, the response to that is that simply by stating compelling reasons, and for the first time the court referred to the earlier decisions in Fultz and the earlier decision in Hagstatt, which the court had completely missed, and of course Kamakana, which had just come down. So that simply by stating the words compelling reason does not reverse what the court did. What the court did in the order on the motion to compel was simply say, my decision the first time was good enough to meet the compelling reason standard, which this court in Kamakana said was not good enough, and in Fultz said it's not good enough. Compelling reasons are more than good cause. I think what the court did, with great respect, is he started at the right point, because there had never been a determination that these documents were appropriately put under a protective order. So the first task of the judge was to decide that question, whether there was good cause for keeping the documents under seal. Now I believe the record reflects, Your Honor, that the judge didn't even get that part of the analysis right, because Fultz and Hagstatt and later Kamakana teach that in applying that standard, the judge is supposed to articulate, based on non-speculative facts, the basis for finding good cause exists, and the judge didn't do that. He simply followed the lead of the parties in this case in saying there's a bunch of documents that have trade secrets, confidential matters, reliance. He just listed a whole group. Counsel, your basic pitch to us is that the district court applied the wrong legal standard in determining what should happen to these documents. If we agree with you, why wouldn't we remand it for the judge to use the correct legal standard and either release the document or, as to each document, give the kind of compelling reason that we've said is okay? You've kind of asked us to do that, but why would that be our task in the first instance? I understand, Your Honor, and the opinions in Brown and Williamson and Valley Broadcasting Indatement and Judge Reinhart's dissent in Erection Company clearly suggest that this court has the power to do exactly what we've asked the court to do. Well, we may have the power to do it, but it's probably not the only thing we have the power to do, and assuming that we could do either one, why wouldn't it still be better to allow the district court to do it in the first instance where they have much greater familiarity with all of the issues and all of the parties and all of the documents and everything else that's going on? I have two answers to that, Judge Graber. In the first instance, by looking at both the original order and the order on the motion to consider, I think that Judge Reinhart's admonition of this court not engaging in a futile act is apt. Secondly, Your Honor, I think that if this court is to send this matter back, then the court can do several things. First of all, as stated in Erection Company and Hagstaff, I would respectfully request that this panel retain jurisdiction over this matter, which the court can do. Secondly, as the court did in Fultz, the court can issue specific instructions to the district court as to how it should proceed. The court there in Fultz, and Kamakana was a different posture, the court in Fultz essentially did not allow the parties to take a third bite at the apple. Instead, the appellate court required the district court to redact, which this court never considered, certain, in that case it was medical identification, but to redact information and to release all other documents unless the court found compelling reasons supported by specific facts. And of course, if you re-judge Fletcher's opinion in Fultz, and I'm sure this court has, I didn't mean to imply that the court hadn't, but it was clear that the court was saying to the district court, these documents are to be released unless you've got a really good reason not to. And I think that it's appropriate in this situation for the court to tell the district court that because the district court simply did not follow the appropriate standard. And so when we do that, what about the appellee's reliance on the protective order? Yes, Your Honor, I think that both Fultz and Hagstadt make it absolutely clear that the parties cannot, as a matter of law, rely on a blanket protective order. In this case, as in the earlier decisions, what happened was the parties stipulated, I should say the party, Southwest Airlines, stipulated to a protective order. Boeing was not a party to the action, and SWAPA, the Southwest Airlines Pilot Association, reached a sidebar agreement with the party saying, we'll come in, but they never applied to the court to be made part of the protective order. That order covered raw fruits of discovery. Then the motion for summary judgment comes along, and in the protective order itself it's clear that at trial, or the order didn't face a dispositive motion, which happened in this case, that the court would make another order. Well, it never happened. And so the first time that the court had to address the concerns that we've raised here was on the motion to unseal, and at that point was the first instance that the court applied the good cause standard. I submit in that context, Your Honor, there couldn't have been reliance. There couldn't have been reliance on keeping the documents under seal when they filed their motion for summary judgment, and there certainly could not have been reliance at the time that the motion to unseal was made because that was the first time that the issue had been raised. Thank you. Yes, Your Honor. And basically what we get down to are these two decisions, Fultz and Kamikana, that set out what's controlling the situation. I think that's right, Judge Gibson. I would add to that list Hagstead, which was the first in line, and Fultz cites Hagstead. But those three decisions make it clear that, as was the situation in the case of the Fultz case, in this case, when there are dispositive motion documents, then the strong presumption of public accessibility applies because, as the court said in Fultz, those documents lie at the very heart of the public interest in being able to know what the court did. The court disposed of an issue that just this week or just last week was before the Supreme Court, a punitive damage question. So there's no doubt that that was an important issue. In fact, one can assume because of the record that once the punitive damage issue was out of the way, the parties were able to settle in very short order. The decision was handed down in April. It was made final with findings of fact in May. And by the end of the year, the cases were all gone. So it was that ruling that was critical to this case, and it's that the factors that were at issue in that case is what the public interest is designed to protect, the right of the public to know what the parties were saying in connection with the punitive damage issue and what factors Judge Liu based his decision on when he decided that punitive damages were not available. It seems to me that the other question that I would like to address briefly before my initial time is up is this notion that I expect the parties to argue, which is that these documents contained lots of protectable information, specifically trade secrets. And I think the difficulty with that argument, Your Honors, is that the parties simply didn't establish non-speculative, fact-based support for those claims. Southwest Airlines did a masterful job in laying out over 145 pages with regard to each document. What was at issue? They gave a laundry list. But that's exactly what false teaches they shouldn't do. It was just a laundry list. These documents contain trade secrets. These documents contain confidential information. With the documents that this Court has available to it, I submit it would be very difficult for this Court to go back and say, does this argument apply to this document? Does this argument apply to that one? And their support for that were two declarations. Mr. Hansen's declaration was a little different. He was just saying, I sent the documents to the government. One was Mr. Crum, and Mr. Crum is a vice president for air traffic safety, I believe. He didn't even acknowledge reading the documents. As best one can tell, he never saw them. The second declaration was by the general counsel. And having been in that position before, I can tell you that there are a lot of things that general counsels don't know. She, again, did not say that she had even seen the documents, and she gave, as did Mr. Crum, a series of general statements. We protect these documents. We rely on them. We need protection. But no way to tie any specific document to any particular argument. Now, Boeing at least did a better job.  But then he followed that statement that I've read him with the same kind of generalized statements. We work hard to protect these documents. Our business interest would suffer if these documents were released. Well, at the time that the motion to unseal was being heard, the documents were already over three years old. They're over five years old now. And no attempt was made at any point by any affiant to say, if this document, this specific document gets out, then Boeing or Southwest Airlines might suffer this particular harm. Now, SWAPA claims trade secret privilege with regard to one document and one document only. And that's a survey that they did of their members following the air crash that led to the litigation in which these documents were filed. SWAPA admitted in their papers that they always intended to share the results of this survey with Southwest Airlines, that their goal was not to protect some business interest of SWAPA, but to make flying safer, a laudable goal, a laudable goal. But when a survey of that type becomes part of the record upon which the trial court disposes of a key element of the case, punitive damages, then I submit, Your Honor, that there is, Your Honors, it simply is no trade secret interest at stake. The parties raised several other things in addition to reliance. If the court has any other questions, I'd be happy to address them. If not, I'll yield the floor and save the rest of my time. Thank you for the rebuttal. Thank you, Your Honor. You have six minutes left. Good morning, and may it please the court, my name is Christopher Young. I'm counsel for Southwest Airlines. I will be arguing for the majority of the 20 minutes allotted, and counsel for Boeing and for SWAPA are also present here today, and they will each be speaking for a few minutes as well. Appellant has correct one thing and incorrect two things. The one thing that appellant has correct is that the district court was to apply the compelling reasons standard in making its determination in this case. The two things that appellant has incorrect are, number one, the standard by which this court is to review the district court's application of that standard, and perhaps more fundamentally, appellant has incorrect what the district court actually did. Well, I'd like to start with the third thing, because in the first order, the court basically not only describes but appears to apply a good cause standard. And in the second order, it's kind of a curiosity, because as I read the order, it doesn't even say, well, I'm going to reconsider it under the old standard. It just says, well, that's what I already did. But it doesn't look like that's what the court already did. And had the court said, let me start over, but it didn't seem to read that way to me, and I found that very curious. Am I reading too much into that second order? Well, I don't think, Your Honor, I don't think you're reading too much into the second order. With all due respect, I think that if you read closely the first order of the judge, the court did exactly what the court was to do. And I think the reason the second order doesn't sort of redo everything is that the district judge knew what he had done before issuing the first order. And the second order simply clarifies, this is what I have done, and goes through an exhaustive detail, a recounting, not sort of this is what I should have done, and now this is what I have done. But if you read the second order, the July 6 order, it is very clear that the court says, when I received this task, these are the steps that I followed. And if you go back and read the first order, that's exactly what the court did. But did it, in the first order, did it analyze each of these particular documents? Absolutely. In detail as required by Fultz? Yes. And I think that that's a key point. Fultz requires, and the authorities require, that the court is to review each document. Essentially what appellant's argument boils down to is that the district court should have shown more of its work, that the district court should have issued more. But isn't that exactly what our cases require? Because if it doesn't, as you put it, show its work, then how are we to review whether the court's order is properly supported? I think that Your Honor has it exactly correct. Under Hagestad and the other authorities, the district court is to state the basis for its ruling without relying on hypothesis or conjecture, so as to permit for meaningful review. And I think that looked at in the context of this case, that is precisely what the court below did. And I think that for a couple of reasons. The briefing below, and appellant does an excellent job of setting up sort of a straw man of generalized categories and that there was no application of the facts. Even the most cursory review of the briefing below, and the reason I'm starting with that is because that's where the district court started, reveals that that briefing submitted before the first order was issued goes through very carefully and applies many different grounds, yes, but applies them to each and every document. There was no briefing below that simply said, well, there's a lot of trade secrets, there's a lot of privacy, there's a lot of this. And so when the court was presented with that information, that's number one. The court also was relying on the fact that he knew what these documents contained, because the district court presided over the underlying cases. There were about 60 cases below. It was a substantial part of the docket of the district court for several years. The dispositive motion at issue had been decided not only a couple of years before this came up, and the judge made it clear at the hearing that we had, and that's in the transcript, that he had some familiarity with the issues, he was very familiar with what went on, and that he intended to review each and every page. So that's number one. What is your response to counsel's argument that the passage of time dissipates some of the kinds of interests that your clients, in the plural, relied upon, not necessarily privacy interests, but certainly trade secret interests or financial interests, something that was secret five years ago or ten years ago may not need to be protected now, may not have a compelling need to be protected now, which is really the standard? I think that that is a very good question, and again I think it's something that the district court relied on and examined in its discretion below. My review of the declarations submitted and of the evidence submitted indicates clearly that these are not momentary trade secret issues. These are issues going to the heart of the operations of the company, going to the competitive advantage of the company, specifically with regard to the trade secrets issues, and are not the types of things that are going to dissipate over time. But the underlying comment that I'd make in that regard is that the district court took that into account. The district court was familiar with the documents. Could you give us an example of that? I have to say we asked for all the records and we didn't get all the documents. I've only seen some of them. Could you give me an example of how the district court analyzed a particular case? Certainly. The district court went through each of the documents after stating that it was going to go through each of the documents. The district court then stated not one but 20 different grounds for why it was justified and appropriate that the document should remain under seal. I cannot, I can certainly discuss the briefing as to a specific document and why that specific document should remain under seal as stated and as elucidated by the district court. The district court did not and was not required to go through each and every document and to state this document is to remain sealed for this reason and this reason and this one is to remain sealed for this reason and this reason. But that's not required. It's very clear. But we have to be able to understand which documents, we have to be able to understand that with respect to each document even if the district court doesn't describe it that way, don't we? Absolutely. And I think that upon review of the record including the briefing that was submitted and upon review of what the district court actually did, it's very clear that the district court applied the right standard, the district court set forth its grounds for doing so, and the district court engaged in the appropriate analysis. Many of the cases that were cited by appellant on this exact point, Valley Broadcasting, for example, in that case the district court did not undertake the exhibit by exhibit review in order to determine which exhibits should be released. The analysis itself may have been undertaken here. The court clearly has stated, and I think that given the abuse of discretion standard, we certainly have to give deference to the fact that this was within the court's discretion to do, in the July 6th order the court expressly states, I have reviewed these documents. I have looked at each of these documents. I know the context of these cases. I find that the interest in the public in these documents is minimal, and I find that there are substantial reasons for keeping the documents under seal. Now that goes back to, Judge Nelson, your original question when we started down this road, which was how do we know from the May order that the court actually applied the compelling reason standard and not just the good cause standard. And the words are not dispositive, but the words are not dispositive either way. It doesn't matter under Bateman and other authorities that the court didn't actually say compelling reasons. What matters is what the court did. Similarly, in the second order, it wouldn't matter if the court just said compelling reasons and then didn't actually do the analysis. In other words, on both sides of that, it's not the words compelling reason. Either their absence or their existence doesn't matter. What matters is the analysis that was undertaken. And the analysis in the May order is that the judge looked at the good cause first in order to keep the documents, to note that the documents were correctly protected under the protective order, and then expressly, though, went to step two. And that's important. If the court was only applying the good cause test in the May order, the court would have stopped after finding good cause. But the court did not stop upon finding good cause. The court went on to say that there's a second step and that the second step supports a finding, that the presumption of public access has been overridden. That's in the record of page 295, which is also page 9 of the original order. The court found that the disclosure of the documents under seal would not aid the public in understanding the judicial system, that the public did not have a significant interest in the documents. In other words, essentially, to put it more colloquially, that there was no upside to unsealing the documents and that there was enormous downside. This is in the second full paragraph on the record, page 295. The court finds... Well, in 295 on paragraph, the second full paragraph... Yes, Your Honor. It seems to me that this is like an analysis. It says the danger that access to these highly confidential documents could harm the parties greatly outweighs any general benefit conferred on the public if granted access. It doesn't say why. Well, but the why, Your Honor, is above. Because the court has first found that there are upwards of 15 to 20 reasons. This is back to page 291. And this is... So backing up in the analysis, the court first says, look, these are the reasons that these documents should appropriately be sealed. They contain all of this information, competitive information, personnel information, employment, all sorts of reasons as cited in the briefing, 200 pages of briefing, essentially incorporating that, which the court has said it reviewed. So that's step one. The court then goes to step two and says, these reasons above, expressly incorporating those reasons, are also the reasons why the harm is to be there. And that's starting on the last line of page 294. So backing up, we've got good cause. The court then says, okay, now I need to do more in the May 10th order. I need to do more than good cause. And what I'm going to do is I'm going to look at the public interest, and not just look at the public interest and balance it, recognize expressly that there is a presumption that these documents should be unsealed. This is the compelling reason standard. Recognizing the public interest, why should the documents remain sealed? I find that the factual findings detailed, moving down to page 295, above, supporting a good cause determination, paraphrasing, also support a finding that the presumption of public access has been overridden. So I would submit that that line is exactly where the court did that. The court says, look, I'll tell you why the presumption of public access should be overridden here. It's because of these 20 reasons above, which in my page-by-page review of these documents that I went through. But those 20 reasons clearly don't apply to each and every document. Correct. So are we supposed to uphold it if we think any one of those reasons applies? Or, I mean, then what's the balance there? I guess my problem is if we don't know how the balancing occurred with respect to any given document, it's very hard to assess whether there's been an abuse of discretion with respect to that decision. Well, I would submit that the abuse of discretion would take place if it were clear or there was some indication that the district court did not do what it said it was supposed to do. Now, here, the district court could certainly have set this out in more detail, but there's no indication whatsoever, other than speculation of appellant, that the district court did not do exactly what it was supposed to do, which is to look at the upwards of 200 pages. And since I drafted and oversaw the preparation of those 200 pages of briefing, I can speak with personal recollection to this. That's very unusual. I've never submitted a 150-page brief before, and I hope never to do so again. So we know that's what the judge read. And so if the judge read that, and, again, in that 150 pages of briefing, in addition, which was combined with a 20-page concordance, which applied each of the reasons to each of the documents and several of them, supported by evidence, supported by facts, keeping in mind, of course, that in presenting these facts, we can't disclose the actual documents because that's the whole point, which is why it's a bit difficult to respond to appellant's comment that the evidence was lacking. I think if you read the briefing, the evidence is not lacking. It's very clear that we did what we needed to do. So to sum that up, what the district court did is the district court took that 200 pages of briefing and performed the analysis and said that he performed the analysis. And if that wasn't clear from the May 10th order, the judge was extremely clear. And I think if you review pages 306 to 308 of the record, Judge Lew, in excruciating, well, not excruciating, but in great detail, goes through each of the steps in the analysis. Again, not sort of saying, look, I did it wrong, here's what I'm doing again, but saying this is exactly what I did in case it wasn't clear from my May 10th order. This is exactly what I did. This, in effect, the July order might function as the court's response to the arguments raised here today, the district court's response to the arguments raised here today. He says, I reviewed the documents. This is page line four of page 307. Number one, I reviewed the documents. Number two, I reviewed the parties' arguments submitted, the 200 pages of briefing, which applies many of these reasons to each of the documents there and is very clear as to which documents are protected by which reasons. And I first determined, this is the district court again, that good cause exists satisfying the sealing of these documents. Number two, having determined that these documents were properly placed under seal, I then undertook the second step, starting with the strong presumption. I clearly, not just understood, but clearly understood that the presumption of access may be overcome only on the basis of articulable facts. Moving on to page 308. And I determined that the factual findings supported a finding that the presumption of public access has been overridden. As such, the order of May 10th supports the continued sealing of these documents. So it's very clear from the July order. If it wasn't clear from the May order, and again, I would submit that it is clear from the May order because of the authorities and the two-step analysis that the court went through in the May order, the court makes it very clear in response to the motion for reconsideration that, look, Kamakana doesn't set forth new law. Kamakana cites faults in saying that on a dispositive motion you've got to have compelling reasons and that therefore this is the analysis that I had to go through both before Kamakana and after Kamakana. Now that Kamakana has been issued, I'm going to make it clear that just as the court in Kamakana did, I'm going to engage in this compelling reasons analysis, and I'm going to issue an order making it clear that that is what I have done. So I do think, in summary, that the district court did exactly what it needed to do. It could have done more, but the authorities, starting with Hagestad, which sets forth the standard for what needs to be shown, as it were, the court did exactly that. And that, as a very last point, if the court didn't show its work, it is very clear that the correct thing to do would be to take the issue and order to the district court saying, a little more work needs to be shown. It would hardly be an idle act, as Appellant has argued, to issue an order telling the district court, look, you need to do a little bit more here. That would be a good deal more efficient than for this court to undertake its own analysis of these documents. Because it's clear that the district court, I think, did the analysis. If the more reassurance in that regard is needed, there you have it. One of the suggestions that opposing counsel made was that if we were to agree that not enough of the work was shown, to use your analogy to high school math, I guess, that was the last time I thought about that phrase, that this panel retain jurisdiction so that yet another panel doesn't have to figure this out. Is that something that you find objectionable? It is. I know you want to have it affirmed. No, I do want to leave my co-counsel at least a minute and a half here. But let me respond to that, because I think that's an excellent point. Appellant is essentially saying, look, to this court, if you send me back down, the district court is just going to get it wrong again, and I'm just going to be back here, and therefore you need to retain jurisdiction. There's absolutely no basis for that. The district court has issued the order. The district court has clearly performed the analysis and is capable of doing additional analysis. So there's no reason to presuppose it will be back here. There are two different things that go on at this court on a regular basis. One is that if a case is complicated, oftentimes a panel will say that if there are any more appeals, we'll take them, because it's complicated and we think we've figured out some stuff and saved people time. There are cases in which a remand is to a different judge if there's a belief on the part of the panel that's demonstrated in the record that the judge cannot or will not do what they're told. As I understood counsel's request, it was not the latter. It was not to oust the district judge from potentially a remand, but was to be efficient here. At least that's how I understood his suggestion. Well, I concur, and I hope that that's what's being said, but at the same time I still think to retain jurisdiction presupposes that there would be basis for an additional appeal. To me it's very clear that here... Well, there might be. Suppose everything were to be released. You might not like that. Well, that's very true. Somebody might be unhappy. In that relatively unlikely event, because I think, and again, I don't say unlikely because I know what the judge is going to do. Well, I do to some extent. I think I know what the judge is going to do because it's what he already did twice in these two orders. So I think that what's going to happen is the district judge is going to undertake the same analysis or perhaps not even do additional review. He's going to say, look, I did the analysis. If I need to apply this, here's what I'm going to apply. But I think that's a dangerous standard to set. Let me reach that also because we are talking here about a stack about yea high, perhaps a foot high of documents which were sealed. There are cases where you've got terabytes of data in an electronic discovery case, thousands of documents in a larger piece of litigation. I think it's a very dangerous precedent to set up an explicit standard that says, look, a document-by-document review and analysis needs to take place in each and every case and needs to be explicit in the order because it would generate orders which were hundreds and hundreds of pages long, dwarfing even the briefing of the parties. Here, the district judge did exactly what judges often do. He said, look, I've heard the arguments. I've reviewed all the papers. Here's what I decide based on all of those papers incorporating the arguments made. Thank you, counsel. You have exceeded your time, and I think we understand your position. I will give each of the other counsel a minute each because we used up the last of your time. Thank you, and I very much appreciate that. It will certainly save my religions there. Thank you. Thank you, Your Honor. May it please the Court, I'm Ron McIntyre for the Boeing Company. Boeing was a stranger to this case until it was asked for documents, and what we're talking about here is only nine documents. In the Court's first order, it specifically describes all nine and says that it went through each of those and comes to the conclusion, not just there was good cause for those to be sealed, but goes beyond that and says, now we have to balance the danger of disclosing those against the public's interest in seeing them. So I think that the Court did the detailed analysis on the Boeing documents right from the start. Nineteen of the 20 reasons do not apply to the Boeing documents. They are trade secrets. Mr. Zachary really makes no bones about agreeing to that. Mr. Zachary's complaint is that we haven't shown harm from the disclosure of these trade secrets. Yet he also says we can't speculate about what might happen. We're not in a position to say what exactly would happen if these documents got out into the public because we don't know what Airbus's competing system is. Is it better? Is it worse? Would Airbus make use of this? Is there some upstart manufacturer out there who might want to use this to get a leg up and get into the industry? That would all be speculative on our part. The best we can do is to say we value these things as trade secrets. We make our employees agree not to disclose them. We make our customers agree not to disclose them outside of our relationship with our customers. And we take great efforts to keep our intellectual property to ourselves and not let it get out in the public. There's a generalized danger of that happening. We can't say exactly what that is. But we do believe that there would be great harm in some way if these got out into the public. Thank you, Counsel. Mr. Enoch. Good morning. Nicholas Enoch on behalf of the Southwest Airline Pilots Association, the Pilots Union. Actually, I think I am in a position to tell you what could happen if our documents were to get out. And to be clear, the judge was very specific. This is on page 6 of the May 10 order. And as just a brief background, after the original plane accident took place at Burbank, the Southwest Airline Pilots Association, the union, sent a survey out of its members in order to get raw feedback to promote a safe working environment and in turn to protect the passengers, obviously, on the planes. They received more than 1,000 responses. And frankly, only a handful of these surveys ended up in the court filing. So at best, we're not even seeing a representative sample of the feedback. And this court actually will be in a position to review those documents because they are listed very clearly in Judge Liu's order. I would suggest, and we did in our briefing, that if the raw feedback from pilots who never expected these surveys to be made public were made public, it has a couple of effects. One is that, first of all, most of these are anonymous. They're not even signed. As you will see when you have an opportunity to review this handful of documents, the feedback is quite candid. And it was never intended to be shared with... Mr. Zachary points out, well, SWAP intended to share these surveys with Southwest, the results of the surveys with Southwest Airlines. There's a big difference between sharing the results of the surveys tabulated and put together as opposed to a few select, oftentimes anonymous surveys with their customer base, which obviously our pilots have an interest in maintaining the customer base as well, and the competitors. And providing that sort of feedback, which was never intended to the customer base and to your competitors, has an obvious deleterious effect on the business relationship as well as the relationship with Southwest Airlines, the employer that they do work with in a symbiotic relationship. Equally, what incentive does this court have, or did Judge Liu have, to create a disincentive for a pilots union to not undertake safety surveys after an accident? If this court were to, or after a remand, Judge Liu were to say, you know what, we're going to let these raw safety surveys, anonymous, out, the clear message to labor unions is going to be, before you ask these sorts of questions to your membership, you better think long and hard of what happens if some third party comes along several years down the road and subpoenas them. And I would suggest this gets actually to the Dowling case, in which this court kind of ducked and weaved around the self-critical analysis. And we're not asking this court to adopt it, but I think we can look at the principle there, which is that in a post-accident situation, do the courts really want to be in the position where we create a disincentive for people to take a look at something and try to figure out what happened? Counsel, you've exceeded your time. We appreciate your point of view. I think we understand your position. Mr. Zachary, you have a few minutes left before we vote on it. Thank you, Your Honor. May it please the Court. Let me start, if I may, and I think this goes to the point that Judge Nelson was making, the footnote six in the false decision, where Judge Fletcher said, as, quote, we rely in the first instance upon the district court conducting the in-camera inspection to assess critically the arguments of the party opposing disclosure. Meaningful appellate review made possible by the district court's articulation of compelling reasons for its decision, supported by specific factual finding, provides a second line of defense. Now, I submit, Your Honor, that that's not what happened in this case, and the scariest words I've heard here this morning were from Mr. Young when he said, we know what's going to happen. And unfortunately, Your Honors, we do know what's going to happen because it happened twice. If we were up here on appeal from the first order, that would be one thing. But we went back to Judge Liu and we said, you've got it wrong. You've got it wrong. Read Kamakana. Read false. Well, there are compelling reasons sometimes. I mean, you seem to be arguing that if only the judge knew that there was a compelling interest standard, you'd have to win, but that isn't necessarily so. Your Honor, I believe that in this case, and, for example, Your Honor asked Mr. Young the question about the passage of time. The judge never addressed that. The judge never addressed redaction. The judge never addressed in any meaningful way what the public interest is in releasing these documents. Simply, for example, on page 290. It's the public interest. I'm sorry? How would you describe the public interest? The public interest is the one that has been articulated over and over again, starting with the Supreme Court in the Nixon versus Warner communication and continuing to this day, which is that the public has an interest in making sure that the judicial process is handled appropriately, that the ultimate supervisors of the judiciary is the public, that as the Supreme Court in Mr. Berger's opinion, Chief Justice Berger's opinion in Richmond newspapers pointed out, And what was the chief authority that you based that statement upon? On what that is? Both Kamakana and Foltz, and to some extent Hagstead, but I think Kamakana and Foltz both say that there is a public interest in where there's a dispositive motion. As Judge McCowan said in Kamakana, that lies at the heart of why we want public disclosure, because unless the public can see what the documents are that the court relied upon and understand, based on that, what the court did, then the public can have no confidence in the decision. For all the public would know, Judge Lew had felt that punitive damages simply were never appropriate, but we never see the papers, so we never know what he was looking at, and that's the public interest. It's not, Mr. Young was fond of calling it, my curiosity-based interest, but my curiosity like that of the public is, what did Judge Lew have before him when he made this dispositive decision on a critical issue in the case? And I think that Judge Nelson is correct. When you look at what the judge did, he said, the court went on to state, the factual findings detailed above supporting good cause determination required by Rule 26 also support a finding that the presumption of public access has been overridden. Well, that's certainly possible. You know, let's take a standard trade secret. A standard trade secret supports good cause, but it also is a compelling reason not to disclose something. So, again, just because the standard is correct does not necessarily mean that disclosure follows. Well, there's two problems with that, Judge Ray. The first is that the court in Foltz and, again, in Comicon, it teaches that good cause is not the same as compelling. I didn't say that in my question either, but you seem to suggest that it's improper to say that the same facts can support both levels of conclusion. That is, the lower level of conclusion, good cause, and the much higher level of conclusion, compelling reasons. But the same facts could. If there were facts articulated, the difficulty is that the court has before it the declaration of Mr. Crum and Mr. I think it's Brehaus for Boeing. I apologize if I got the name wrong. But both of them simply list talismanic general categories of harm not once with regard to any specific document. Do they say, if the trial court releases this document, then we are going to suffer this harm? And, for example, the first document up in the pile from Southwest is the Memorandum of Points and Authorities. I've read a lot of Memorandum of Points and Authorities in my day, as I'm sure this court has, and I would be hard-pressed to find a trade secret in any of them. But they're seeking to protect the core statement of their reasons for summary judgment, the Memorandum of Points and Authorities. Your Honor is absolutely correct. It is possible that the facts supporting good cause might also support compelling reasons, but we will never know. And because the court has before it the record, as was done in Fultz, I think the court can say, we have looked at the record and we find no basis for concluding on this record that there are compelling reasons. We have a generic description of the harm from the affiance, the only basis we have in the record. Judge Liu simply could not have found facts to support the compelling reasons for keeping documents hidden from public view forever. Thank you, Counsel. You have exceeded your time. Thank you, Your Honor. We appreciate very much the arguments of all parties, and the case just argued is submitted for decision. And with that, we will stand adjourned.
judges: Nelson, O'scannlain, Graber